## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROCHESTER DRUG COOPERATIVE, INC.**<br>50 Jet View Drive<br>Rochester, New York 14624 | ) ) ) ) ) | CIVIL DIVISION<br><br>No.: _____ |
| Plaintiff,<br><br>v. | ) ) ) ) ) | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| **GOODHEART PHARMACY, INCORPORATED**<br>1337 South 49th Street<br>Philadelphia, Pennsylvania 19143; | ) ) ) ) ) | |
| **OBIOMA AGOUCHA**<br>2 Fawn Lane<br>Boothwyn, Pennsylvania 19061; and | ) ) ) ) | |
| **DAMIEN AGOUCHA**<br>2 Fawn Lane<br>Boothwyn, Pennsylvania 19061 | ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |

### COMPLAINT

AND NOW, comes the Plaintiff, Rochester Drug Cooperative, Inc., by and through its undersigned counsel, Saul Ewing LLP, and files this Complaint against GoodHeart Pharmacy Incorporated, Mr. Damien Agoucha, and Ms. Obioma Agoucha, stating as follows:

### I.      THE PARTIES

1.      Rochester Drug Cooperative, Inc. ("RDC") is a cooperation corporation organized under the laws of the State of New York, with its principal place of business at 50 Jet View Drive, Rochester, New York 14624.

2.     Defendant, GoodHeart Pharmacy Incorporated ("GoodHeart Pharmacy") is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 1337 South 49th Street, Philadelphia, Pennsylvania 19143.  GoodHeart Pharmacy lists a corporate address of 2 Fawn Lane, Boothwyn, Pennsylvania 19061.

3.     Defendant, Damien Agoucha ("Mr. Agoucha"), is a resident of the Commonwealth of Pennsylvania, residing at 2 Fawn Lane, Boothwyn, Pennsylvania 19061.

4.     Defendant, Obioma Agoucha ("Ms. Agoucha"), is a resident of the Commonwealth of Pennsylvania, residing at 2 Fawn Lane, Boothwyn, Pennsylvania 19061.

5.     At all times material, Mr. Agoucha and Ms. Agoucha operated GoodHeart Pharmacy and the pharmacy ordered pharmaceutical goods and services from RDC.

## II.     JURISDICTION AND VENUE

6.     Plaintiff hereby incorporates by reference the preceding paragraphs as if the same were set forth fully and at length herein.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and § 1332(c)(1) as the amount in controversy exceeds $75,000.00 and the action is between citizens of different states.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(b)(2), as this is the judicial district in which Defendants, GoodHeart Pharmacy, Mr. Agoucha and Ms. Agoucha reside (collectively, "Defendants"), and in which a substantial part of the events or omissions giving rise to this claim occurred.

## III.     FACTUAL BACKGROUND

9.     RDC operates a distributor of pharmaceutical, health and beauty aid products and services (collectively, the "Goods").

10.     GoodHeart Pharmacy operates a retail pharmacy.

11.    Mr. Agoucha and Ms. Agoucha (collectively, the "Agouchas") are shareholders and officers of GoodHeart Pharmacy.

12.    RDC provides Goods to customers pursuant to contract upon order of such Goods from RDC.

13.    In or about December 18, 2012, GoodHeart Pharmacy submitted a credit application (the "Credit Application") to RDC seeking the provision of Goods from RDC.   The Credit Application, which is attached hereto as **Exhibit A,** has the force and effect of a contract as set forth by its terms.

14.    In particular, the Credit Application contains various terms and conditions, and provides that GoodHeart Pharmacy applied to RDC for credit to purchase Goods, and that GoodHeart Pharmacy agreed that the terms and conditions of the Credit Application would constitute a contract between GoodHeart Pharmacy and RDC.

15.    Pursuant to the Credit Application, Defendants had the obligation to pay for all Goods purchased from RDC in accordance with RDC's payment terms.

16.    In particular, the payment for Goods ordered was to occur within twenty-one (21) days of RDC's provision of an invoice to GoodHeart Pharmacy.

17.    GoodHeart failed to remit various payments for the Goods and fell into arrears with RDC.  As of the filing of this Complaint, GoodHeart Pharmacy has failed to pay for goods and services totaling $106,969.89, inclusive of late charges through April 12, 2016.

18.    In connection with the execution and delivery of the Credit Application, the Agouchas each executed a personal guaranty, pursuant to which they agreed that they would become personal guarantors of the debt of GoodHeart Pharmacy to RDC (the "Personal Guaranty").

3

19.     In particular, the Agouchas agreed under the Personal Guaranty that upon default by GoodHeart Pharmacy, they would become, jointly and severally, personally responsible for the full amount due from GoodHeart Pharmacy to RDC.

20.     In addition to the amounts owed for Goods sold and delivered, for valuable consideration (i.e. Goods sold pursuant to an extended payment arrangement), on or about October 28, 2014, Defendants executed and delivered a Promissory Installment Note to RDC in the principal amount of $56,955.73 (the "Promissory Note").   The Promissory Installment Note, which is attached hereto as **Exhibit B**, has the force and effect of a contract as set forth by its terms.

21.     The Promissory Note contains various terms and conditions, and provides that Defendants agreed to pay RDC a total principal amount of $56,955.73, over a period of twenty four (24) months, subject to an interest rate equal to the lesser of the Prime Interest Rate plus two percent (2%) or the highest amount allowable by law.

22.     Pursuant to the Promissory Note, Defendants had the obligation to make all payments to service their debt in accordance with RDC's payment terms.

23.     The Promissory Note also provides that in the event of default, RDC, the Holder, can declare all sums of principal and interest outstanding immediately due and payable without presentment, demand or notice of dishonor, all of which Defendants expressly waived.

24.     While Defendants remitted payments under the Promissory Note through October 2015, numerous payments were tardy and numerous payments were partial.  As of the filing of this Complaint, Defendants owe a total of $35,081.50 plus interest from April 1, 2016 on the Promissory Note.

25.     RDC has made repeated demands upon Defendants for payment for the amounts due under the Credit Application and the Promissory Note, including a written demand as of March 2, 2016.

4

26.     Notwithstanding the express demands, Defendants have failed to make payment due for the Goods sold and delivered to them by RDC.

## COUNT I – BREACH OF CONTRACT
### RDC v. Defendants

27.     Plaintiff incorporates by reference Paragraphs 1 through 26 of the Complaint as if set forth fully herein.

28.     GoodHeart Pharmacy entered into a Credit Application  with RDC providing for the provision of Goods to them (see Exhibit A).  The Agouchas guaranteed GoodHeart's obligations under the Credit Application.

29.     For valuable consideration given, Defendants also executed and delivered a Promissory Note to RDC (see Exhibit B).

30.     RDC provided Goods pursuant to the Credit Application and the Promissory Note to Defendants.

31.     Defendants have failed to pay for the Goods RDC sold and delivered.

32.     The failure to make payment reflects material breaches of the Credit Application and Promissory Note.

33.     RDC has been injured as a result of these material breaches of contract.

34.     RDC has sustained principal damages in excess of $142,051.39: (a) $106,969.89 from the Credit Application; and (b) $35,081.50 from the Promissory Note as a result of the material breach, plus service charges through the date of this Complaint.  The amount of damages will continue to climb post-filing of this Complaint because:  (a) the Credit Application provides for the assessment of a services charge of one and one-half percent (1.5%) per month on the unpaid account; and (b) the Promissory Note provides for the assessment of a twelve percent (12%) per annum or fluctuating rate of four percent (4%) above the prime rate on unpaid amounts.

WHEREFORE, RDC respectfully requests a judgment in its favor and against the Defendants, jointly and severally; an award to RDC of its interest and costs; an award to RDC of reasonable attorneys' fees and other litigation costs; and a further award of such additional relief as this Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT
### RDC v. Defendants

35.     Plaintiff incorporates by reference Paragraphs 1 through 34 of the Complaint as if set forth fully herein.

36.     RDC provided Goods to GoodHeart Pharmacy upon its request.

37.     RDC provided servicing of debt owed to Defendants upon their request.

38.     Defendants received the Goods and extension of credit provided by RDC and substantially benefitted from their receipt.

39.     RDC has a right to reasonable compensation for the Goods and credit provided.  By failure to make payment under the Credit Application and Promissory Note, Defendants have been unjustly enriched to the detriment of Plaintiff.

40.     Defendants have failed to pay for the Goods and services provided and credit extended, and thereby injured RDC.

41.     RDC has sustained principal damages in excess of $142,051.39: (a) $106,969.89 from the Credit Application; and (b) $35,081.50 from the Promissory Note as a result of the material breach, plus service charges through the date of this Complaint.  The amount of damages will continue to climb post-filing of this Complaint because:  (a) the Credit Application provides for the assessment of a services charge of one and one-half percent (1.5%) per month on the unpaid account; and (b) the Promissory Note provides for the assessment of a twelve percent (12%) per annum or fluctuating rate of four percent (4%) above the prime rate on unpaid amounts.

WHEREFORE, RDC respectfully requests a judgment in its favor and against Defendants, jointly and severally; an award to RDC of its interest and costs; an award to RDC of reasonable attorneys' fees and other litigation costs; and a further award of such additional relief that this Court deems just and proper.

## COUNT III – ACCOUNT STATED
### *RDC v. GoodHeart Pharmacy*

42.     Plaintiff incorporates by reference Paragraphs 1 through 41 of the Complaint as if set forth fully herein.

43.     RDC has a Credit Application with Defendant, GoodHeart Pharmacy, pursuant to which it has supplied Goods to Defendants (see Exhibit A).

44.     RDC invoiced GoodHeart Pharmacy for the purchase of Goods, which invoices were duly accepted and acknowledged by GoodHeart Pharmacy as true and accurate.

45.     RDC has sustained principal damages in excess of $142,051.39 as a result of the material breach plus service charges through the date of this Complaint.  The amount of damages will continue to climb post-filing of this Complaint since the Credit Application provides for the assessment of a services charge of one and one-half percent (1.5%) per month on the unpaid account.

WHEREFORE, RDC respectfully requests a judgment in its favor and against GoodHeart Pharmacy; an award to RDC of its interest and costs; an award to RDC of reasonable attorneys' fees;  and an order in favor of RDC for an account stated.

## COUNT IV – BREACH OF GUARANTEE
### *RDC v. the Agouchas*

46.     Plaintiff incorporates by reference Paragraphs 1 through 45 of the Complaint as if set forth fully herein.

Dated:  April 13, 2016                          Respectfully Submitted,

BRENNA D. KELLY, ESQ.
Pa ID No. 320433
bkelly@saul.com
Telephone:  (215) 972-7874
Facsimile:  (215) 972-1919
Attorney for the Plaintiff
Rochester Drug Cooperative, Inc.

SAUL EWING LLP
1500 Market Street
38th Floor
Philadelphia, PA  19102
Telephone: (215) 972-7777
Facsimile: (215) 972-7725

## Exhibit A

**Credit Application**

*Goodheart Pharmacy, Inc.*

Steve F.

Page 1

**RDC** ☞

**Rochester Drug Cooperative, Inc.**

www.rdcdrug.com

4061

50 Jet View Drive
Rochester, New York 14624
*Remit Payments To:*
PO Box 24389
Rochester, New York 14624-0389

Phone: 585-271-7220
800-333-0538
585-271-3551
Fax: 800-571-3784

Version 3.13.12

PLEASE PRINT LEGIBLY

## Application

Credit Line Requested: $50K

Credit Line Approved: _____

Legal Name of Business: Goodheart Pharmacy Inc   Trade or DBA name: Goodheart Pharmacy Inc

Business Type: Corporation: ✓   Proprietorship: _____   Partnership: _____   LLC: _____   Independent

State of Incorporation: Pennsylvania   Year Incorporated: 2011

Street Address: 1339 South 49 Street

City: Philadelphia   County: ____   State: PA   Zip Code: 19143

Business Phone: 215-724-3300  Fax: 215-724-3301  e-mail: _____   web site: _____

Federal Tax ID Number: _____   Social Security Number (if Proprietor): _____

Please List the Following Based upon Business Type (Attach Additional Sheets if Needed):

Names:
Officer: OBioma AGuocHA   Stockholder: _____   Partner: _____   Partnership % _____
Officer's Home Address 2 FAWN LN, BOOTHWYN, PA 19061   Home Phone # 484-483-7182  Social Security # 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
Officer: DAMIAN AGuocHA   Stockholder: _____   Partner: _____   Partnership % _____
Officer's Home Address 2 FAWN LN, Boothwyn PA 19061   Home Phone # 484-483-7182  Social Security # 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

### BUSINESS/PHARMACY INFORMATION

State Board of Pharmacy License Number: PP485214 Exp. Date: 8/31/2013  DEA No.: FG9060587 Exp. Date: 9/30/2013

NCPDP #: 3949551   NPI# 1659665271   Medicaid# 1025965271001

Estimated Annual Purchases: Total: $450,000   From RDC: 400,000

Number of Employees: 2   Insurance Policy Number/Underwriter: _____

### TRADE/SUPPLIER REFERENCES

*(Please attach the most recent Statement of Account from your Primary Vendor)*

Primary Vendor: H.D. Smith   Name of Contact: _____   Phone No.: _____   Monthly volume: $40,000

Secondary Vendor: ___   Name of Contact: _____   Phone No.: _____   Monthly volume: _____

Primary Generic Vendor: _____   Name of Contact: _____   Phone No.: _____   Monthly volume: _____

Secondary Generic Vendor: _____   Name of Contact: _____   Phone No.: _____   Monthly volume: _____

Bank Reference: _____   Name of Contact: _____   Phone No.: _____

### TERMS AND CONDITIONS:

The Applicant hereby applies to Rochester Drug Cooperative, Inc. (RDC) for credit to purchase its/their goods and services and should RDC agree to extend credit, the Applicant agrees to the following terms and conditions, which constitutes a contract between the Applicant and RDC:

1. Applicant shall pay for all items purchased and services rendered in accordance with RDC's payment terms.
2. All payments shall be made in a form satisfactory to RDC and will be received prior to the Due Date as established below. Applicant understands and accepts that in the event the Applicant issues or supplies a check and such check fails to clear the collection process, the Applicant shall be subject to a fee of $50, which fee will be charged to the Statement following the receipt of such check. This fee is subject to change without notice.
3. RDC will issue a Statement of all purchases and services rendered as of Thursday each week. (The "Statement Date").
4. Payment for goods invoiced from each Friday through the following Thursday will be due twenty-one (21) days thereafter.

Version 3.13.12     Business Name: Goodheart Pharmacy Inc                    Page 2 of 2

5.  A service charge equivalent to one and a half percent (1 ½%) per month of purchases for the period covered by each statement cycle will be made if the account is not current. The undersigned agrees to comply with this condition without reservation and to accept the assessment, which will be charged to the Statement the following Statement Date. Failure to pay service charge(s) will result in discontinuation of shipments until the said charge(s) are paid.

6.  Should Applicant fail to pay in full all invoices and other charges when due, Applicant agrees to pay any and all costs and expenses incurred by RDC in the collection of any unpaid invoices and other charges. Failure or delay by RDC to charge or assess for these expenses shall not be waived or otherwise affect RDC's right to collect them. In the event "Customer" violates our Terms and Conditions, or should "Customer" or "RDC" terminate the business relationship, Customer will remit payment of all indebtedness in full within 5 days of violation(s) or termination.

7.  Applicant agrees to notify RDC in advance of any change in ownership, transfer of company assets, bulk sales or other event that would affect payment of any open balance. Applicant agrees not to transfer any open balance without the written consent of RDC. Upon the sale of any stock of the corporation or the transfer of any ownership interest or rights, the Applicant agrees to pay RDC all open invoices, (whether or not due) within five (5) business days.

8.  Applicant agrees to provide a current financial statement, if requested by RDC, from time to time and any other such supplemental information as may be reasonably requested.

9.  Applicant agrees that verification of any and all information contained in this application, or otherwise in any information provided to RDC, may be made at any time by RDC, its agents, successors and assigns, either directly through a credit-reporting agency, or from any source named.

10. Applicant certifies and warrants that all information provided in the application or otherwise submitted is true and correct and is being or will be furnished for the purpose of obtaining/retaining credit from RDC.

11. GUARANTEE: The undersigned, by reason of their financial interest in the Applicant and as an inducement to extend credit to the Applicant, hereby personally guarantees the prompt and full performance and payment according to tenor of the within agreement, to its holder hereof and in the event of default, authorizes any holder hereof to proceed against the undersigned, for the full amount due, including but not limited to late fees, the cost of collection including reasonable attorney fees, and hereby waives presentment, demand, protest, notice of protest, notice of dishonor and any and all excess notices of demand of whatever character to which the undersigned might otherwise be entitled. The undersigned further consents to an extension or modification of terms granted by the holder and waives notices thereof. If more than one guarantor, obligation of each shall be joint and several.

12. Applicant represents and warrants that they are an organization in good standing; are in compliance with other contracts and obligations previously incurred, that there is no action or suit, proceeding pending or threatened against them.

13. Applicant represents that there is no Security Agreements against Applicants property except, as herein disclosed, that Security Agreement filed by Goodheart Pharmacy and dated 1-18-12.

14. This application shall be interpreted under the laws of the State of New York. Should any portion of this application be found to be unenforceable, all other parts of said application shall remain in full force and effect.

15. RDC may, in addition to all their rights and remedies, report Applicants names and account information to a credit-reporting agency.

16. Minimum monthly purchases $30,000.00 in total, or $5,000.00 in Generics. New accounts have 3 months to attain these levels.

17. This information has been furnished with the understanding that it is to be used to determine the amount and conditions of the credit to be extended. Furthermore, I hereby authorize the financial institutions and businesses listed in this credit application to release necessary information to the company for which credit is being applied for in order to verify the information contained herein.

Certification: I/we certify that the information provided in this application is true and correct as of the date set forth opposite my/our signatures on the Application. I/we also acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in the application may result in civil liability and/or criminal penalties, including but not limited to fine or imprisonment or both and the applicable provisions of the United States Code and liability for monetary damages to RDC, its agent, successors and assignees, and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application. Additionally, I/we believe that our firm is financially able to meet any commitments we have made to RDC herein and I/we expect to pay our invoices according to RDC's terms as herein described.

To secure all of the applicant's existing and future liabilities to RDC, the applicant grants to RDC a security interest in and to all of the personal property of the applicant. Wherever located, now owned or hereafter acquired, including but not limited to, accounts receivable/Third party payments now owned or that may hereafter arise, insurance proceeds, prescription records, inventory, documents, equipment, instruments, fixtures, notes receivable, contract rights, chattel papers, customer lists, bank accounts, cash on hand, telephone numbers and other tangibles and general intangibles including replacements, and proceeds of the foregoing, now owned or that may hereafter arise (collectively the "collateral"). Applicant authorizes RDC to file a UCC-1 Financing Statement, along with amendments and extensions thereto. The applicant will cooperate with RDC in obtaining control of the collateral. Upon default under this credit application or any other agreement by the applicant, RDC shall have the right to enforce RDC's rights against the collateral. RDC may pursue any remedy available at law, including those available under the Uniform Commercial Code, or in equity to collect, enforce or satisfy the obligations then owing, whether by acceleration or otherwise.

DAMIAN AGUOCHA                          DAMIAN AGUOCHA                          DAMIAN AGUOCHA
O.B 10M A AGUOCHA                       OBIOMA AGUOCHA                                              Witness
DAMIAN AGUOCHA
Printed Name of Guarantor               Printed Name of Applicant
(Paragraph #11 above)
                                                                                                    Witness
                        12-18-12                          12/18/12
Signature of Guarantor   Dated          Signature and Title of Applicant   Dated

Owner Initials          Credit Manager Initials:

## Exhibit B

### Promissory Note

Oct 28 14 04:13p        goodheart pharmacy                          2157243301                    p.1

Oct 27 14 08:11a        Rochester Drug Cooperativ                   865-657-3043                  p.2

## PROMISSORY INSTALLMENT NOTE

**$56,955.73**                                                  October 27, 2014

  For Value Received, **GOODHEART PHARMACY INCORPORATED** (the "Pharmacy"), a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, located at 1337 South 49th Street, Philadelphia, Pennsylvania 19143; **OBIOMA AGOUCHA** ("Obioma"), residing at 2 FAWN LANE BOOTHWYN, PA 14061, and **DAMIAN AGOUCHA** ("Damian"), residing at 2 FAWN LANE BOOTHWYN, PA 19061 (the Pharmacy, Obioma and Damian are sometimes hereinafter individually referred to as a "Maker" and collectively as the "Makers"), jointly and severally, promise to pay to the order of **ROCHESTER DRUG COOPERATIVE, INC.** ("Holder"), the principal amount of Fifty-Six Thousand Nine Hundred Fifty-Five Dollars and 73/00 ($56,955.73), in lawful money of the United States of America, in immediately available funds. The undersigned further agree to pay interest, in like money, on the unpaid principal amount owing hereunder until such principal amount shall be paid (whether by stated maturity, acceleration or otherwise), at a rate equal to the lesser of the Prime Interest Rate (as published in the Wall Street Journal on the date the payment is due) plus two percent (2.0%) per annum, or the highest amount allowable by law, calculated on the basis of a 365 day year, actual days elapsed. Principal and interest shall be payable in twenty-four (24) monthly installments, each in the amount of Two Thousand Five Hundred Five Dollars and 11/00 ($2,505.11), beginning on or before December 1, 2014 and continuing on or before the first (1st) day of each month thereafter, through and including November 1, 2016. Any and all remaining principal and/or interest accrued thereon shall be paid in full on or before November 1, 2016 (i.e. an adjustment will be made to the final installment(s) due under the note to reflect changes in the Prime Interest Rate). The payments are detailed in the annexed amortization schedule.

  Principal and interest shall be payable at c/o **ROCHESTER DRUG COOPERATIVE, INC.**, P.O. Box 24389, 50 Jet View Drive, Rochester, New York 14624, or such other place as the Holder may designate in writing.

  Interest shall be payable on any overdue payment of principal or interest, including, but not limited to, any amounts due following acceleration of this note at (to the extent permitted by law) the greater of twelve percent (12.0%) per annum or a fluctuating rate of four percent (4.0%) above the Prime Rate from time to time in effect (as published on the date of default in the Wall Street Journal), until such unpaid amount shall have been paid in full (whether before or after judgment). Any payment remitted shall be credited first to interest then due and the remainder to principal.

  The following shall constitute Events of Default hereunder:

Oct 28 14 04:13p          goodheart pharmacy                              2157243301            p.2

Oct 27 14 08:11a          Rochester Drug Cooperativ                      865-657-3043          p.3

(1)     Any installment of principal or interest due hereunder is not paid when due
        and such default continues for a period of five (5) days after issuance by
        Holder or Holder's designee of a written notice of default by regular mail to
        the Pharmacy at the address provided above. Notice to the Pharmacy
        shall constitute notice to all Makers;

(2)     Filing of a petition by or against a Maker hereof under the United States
        Bankruptcy Code (11 U.S.C. § 101, et seq.), as amended from time to
        time, or similar law; appointment of a receiver, trustee, custodian or
        liquidator of or for any part of the assets or property of a Maker; a Maker
        becomes insolvent; a Maker makes a general assignment for the benefit
        of creditors or shall generally fail to pay debts as they become due;

(3)     Dissolution or liquidation of the Pharmacy, or should any attachment be
        levied upon a Maker and not released within ten (10) days thereafter or
        should the operations of the Pharmacy be discontinued for a period of
        three (3) or more consecutive days or six (6) or more days during any
        calendar month;

(4)     Default by a Maker under the terms of any agreement or instrument,
        pursuant to which a Maker has incurred debt from any person or entity;

(5)     Violation or default by a Maker of any term or condition of this Note or any
        other agreement or understanding by and between a Maker and Holder;

(6)     Sale or transfer of the assets of the Pharmacy outside the ordinary course
        of business, or sale or transfer by Obioma and/or Damian of any shares in
        the Pharmacy, or a change in the effective control and/or management of
        the Pharmacy;

(7)     Death or permanent functional disability of Obioma and/or Damian;

(8)     Failure of a Maker to pay any tax owing for more than sixty (60) days after
        its due date;

(9)     Failure of the Pharmacy to submit to Holder a year-end financial statement
        within sixty (60) days following the close of each fiscal year. The financial
        statement shall consist of a balance sheet, profit and loss statement and
        cash flow statement prepared in accordance with generally accepted
        accounting practices;

(10)    Failure of a Maker to produce any financial information concerning the
        Makers requested by Holder;

(11)    Fraud or dishonesty in the operations of the Pharmacy;

Oct 28 14 04:13p          goodheart pharmacy                        2157243301          p.3

Oct 27 14 08:11a          Rochester Drug Cooperativ                 665-657-3043         p.4

(12)   Conviction of, plea of *nolo contendre*, guilty plea or confession of any
       felony by any of the principals, partners, shareholders, officers, directors,
       members or pharmacists of the Pharmacy;

(13)   Commencement by any governmental office or agency (Federal, State or
       local) of an investigation concerning Medicaid fraud or any other crime
       (misdemeanor or felony) in any way relating to the operations of the
       Pharmacy;

(14)   Failure of a Maker to conduct business in a lawful manner;

(15)   Failure of a Maker to disclose information concerning the Makers which
       Holder may reasonably find to change the financial conditions of a Maker;

(16)   A Maker's willful engagement in conduct which is materially injurious to
       Holder, monetarily or otherwise;

(17)   A Maker's making of any misrepresentation to Holder, whether or not
       intentional, for the purpose of obtaining credit or an extension of credit;

(18)   Change in the condition or affairs of a Maker, as may increase Holder's
       credit risk or shall make the debt unsecured or under secured;

(19)   Failure of the Pharmacy to be a shareholder of Holder in good standing (to
       the extent the Pharmacy is a shareholder as of the date of execution);
       and/or

(20)   Failure of the Pharmacy to purchase at least seventy-five percent (75%) of
       its pharmaceutical products, including branded, generics, over-the-counter
       medications and products from Holder.

Should any Event of Default in payment of principal or interest when due as
provided in this Note exceed ten (10) days and the Holder hereof does not elect to
accelerate this Note, as provided below, Makers, jointly and severally, promise to pay to
the Holder a late charge of five percent (5.0%) of each delinquent payment, in addition
to any interest which accrues thereon, for the purpose of defraying the expense of
following-up and handling the said delinquent payment.

Should any Event of Default occur, the Holder of this Note, at Holder's option,
may declare all sums of principal and interest outstanding hereunder to be immediately
due and payable without presentment, demand or notice of dishonor, all of which are
expressly waived. Makers, jointly and severally, agree to pay all costs and expenses,
including reasonable attorneys' fees, incurred by the Holder in connection with the
enforcement of this Note and/or the protection or preservation of any rights of the
Holder hereunder. The Holder hereof may grant to Makers, any guarantors, sureties,
endorsers and any other persons obligated hereunder, extensions of the time for

3

payment of this Note, in whole or in part, without limit as to the number of such extensions, or the period or periods thereof, but shall be under no obligation to do so.

Makers, sureties, guarantors and endorsers of this Note hereby waive due diligence, presentment for payment, protest, demand and notice of every kind, including non-payment, and hereby agree that no failure on the part of the Holder of this Promissory Note to exercise any power, right or privilege hereunder, or to insist upon prompt compliance with the terms hereof, shall constitute a waiver thereof.

Payment of this Note shall not be subject to any counterclaim, set-off, recoupment, or defense of any kind by or in the right of Makers, and Makers hereby expressly and irrevocably waive any rights they may now or at any time in the future have to bring or assert any such counterclaim, set-off, recoupment or defense. It is the intention of Makers and Holder in this regard that this Note shall be paid absolutely according to its terms and Makers shall not pursue any claims they may have against Holder by independent action.

It is the intention of Makers and Holder to conform strictly to the usury and other laws relating to interest from time to time in force, and all agreements between the Makers and the Holder, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by demand hereunder or otherwise, shall the amount paid or agreed to be paid to the Holder, or collected by the Holder for the use, forbearance or detention of the money to be loaned hereunder, or for the payment or performance of any covenant or obligation contained herein or in any other agreement given to secure the loan obligations or in any other document evidencing, securing or pertaining to the loan obligations, exceed the maximum amount of interest allowable under applicable law (the "Maximum Amount"). If under any circumstances whatsoever fulfillment of any provision hereof at the time performance of such provision shall be due, shall involve transcending the Maximum Amount, then *ipso facto*, the obligation to be fulfilled shall be reduced to the Maximum Amount. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to the Holder for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If under any circumstances the Holder shall ever receive an amount deemed interest by applicable law, which would exceed the Maximum Amount, such amount that would be excessive interest under applicable usury laws shall be deemed a payment in reduction of the principal amount owing under this Note and shall be so applied to the principal amount and not to the payment of interest, or if such excessive interest shall be deemed to have been a payment made by mistake and shall be refunded to the Makers or to any other person making such payment on the Makers' behalf.

This Note may be assigned or sold at the sole discretion of the Holder, and shall bind the heirs, administrators, executors, successors and assigns of the Makers and inure to the benefit of any successors or assigns of the Holder.

All or any portion of the balance owing may be prepaid at any time without penalty. This Note shall be construed in accordance with the laws of the State of New York. The State and Federal Courts located in the State of New York, City of New York, shall have jurisdiction over any legal proceedings commenced relating to this Note. Notwithstanding the foregoing, Holder may commence legal proceedings in any court with competent jurisdiction.

Unless Holder consents in writing, the Pharmacy agrees not to create, incur, assume or allow to exist, voluntarily or involuntarily, any obligation for borrowed money or its equivalent, lease, mortgage, pledge, lien or otherwise encumber, any of its property or assets, whether now owned or hereafter acquired.

MAKERS AGREE TO AND HEREBY WAIVE ANY RIGHT TO A JURY TRIAL IN MATTERS ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS NOTE, OR THE CONSTRUCTION, INTERPRETATION, VALIDITY, OR PERFORMANCE THEREOF AND/OR THE MATTERS RAISED HEREIN.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK
(signature pages to follow)

Oct 28 14 04:14p        goodheart pharmacy                              2157243301              p.6

Oct 27 14 08:12a        Rochester Drug Cooperativ                       865-657-3043            p.7


GOODHEART PHARMACY
INCORPORATED.

By X  DAMIAN AGUOCHA
, President

STATE OF              )
                      ) ss:
COUNTY OF             )

On the 28th day of ~~September~~ OCTOBER 2014, before me, the undersigned personally
appeared _____ personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that (s)he executed the same in his/her capacity,
and that by his/her signature on the instrument, is the individual, or the person upon
behalf of which the individual acted, and executed the instrument.

_____
Notary Public

_____
Obioma Agoucha, Individually

STATE OF              )
                      ) ss:
COUNTY OF             )

On the 28th day of ~~September~~ October 2014, before me, the undersigned, personally
appeared Obioma Agoucha, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within
instrument and acknowledged to me that (s)he executed the same in his/her capacity,
and that by his/her signature on the instrument, is the individual, or the person upon
behalf of which the individual acted, and executed the instrument.

_____
Notary Public

NOTARIAL SEAL
Malachy Orji
NOTARY PUBLIC
Philadelphia City, Philadelphia County
My Commission Expires 07/11/2016

Oct 28 14 04:14p    goodheart pharmacy                                    2157243301              p.7

Oct 27 14 08:13a    Rochester Drug Cooperativ                             865-657-3043            p.8


X DAMIAN AGUOCHA

Damian Agoucha, Individually


STATE OF                    )
                            ) SS:
COUNTY OF                   )


On the ___ day of October 2014, before me, the undersigned, personally appeared Damian Agoucha personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that (s)he executed the same in his/her capacity, and that by his/her signature on the instrument, is the individual, or the person upon behalf of which the individual acted, and executed the instrument.


Notary Public

NOTARIAL SEAL
Malachy Orji
NOTARY PUBLIC
Philadelphia City, Philadelphia County
My Commission Expires 07/11/2016


1