**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROCHESTER DRUG COOPERATIVE, INC.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **GOODHEART PHARMACY,** | : | |
| **INCORPORATED, OBIOMA AGOUCHA,** | : | |
| **and DAMIEN AGOUCHA** | : | **NO. 16-1787** |

**MEMORANDUM OPINION**

Savage, J.                                              November 23, 2016

In this action for breach of contract and account stated, plaintiff Rochester Drug

Cooperative ("RDC") has moved for summary judgment, arguing that it is undisputed

that the defendants owe it the balances due under a credit application and a promissory

note.  Opposing the motion, defendants GoodHeart Pharmacy, Inc. and its shareholders

and officers, Damien and Obioma Agoucha, dispute that they agreed to pay for goods

purchased from RDC in excess of $50,000.  The Agouchas contend that despite their

signatures as guarantors of GoodHeart's liability, they did not personally guarantee

GoodHeart's obligation.  They also argue that RDC has not established an account

stated claim because it failed to prove that it mailed the invoices.

It is undisputed that the defendants did not pay for all goods purchased from

RDC.  Nor is there any question that the Agouchas guaranteed payment for goods

purchased.  Therefore, because there are no disputed material facts, we shall grant

RDC's motion for summary judgment.

**Background**

On December 18, 2012, GoodHeart, a retail pharmacy, submitted a credit

application in connection with its request that RDC, a pharmaceutical, health, and

beauty-aid product distributor, sell it goods for resale.[1]   Under the terms of the Credit Application, GoodHeart agreed to "pay for all items purchased and services rendered in accordance with RDC's payment terms."[2]   GoodHeart also agreed to pay RDC within twenty-one days of each weekly invoice, subject to a monthly 1.5% service charge on unpaid balances.[3]

Damien and Obioma Agoucha signed the Credit Application on behalf of GoodHeart as officers and also in their individual capacities.  The Agouchas personally guaranteed GoodHeart's obligations.[4]

Almost two years later, on October 28, 2014, the Agouchas, again on behalf of GoodHeart and in their individual capacities, signed a promissory note.[5]   GoodHeart and the Agouchas promised to pay RDC $56,955.73, plus interest on any unpaid balance at the rate of the lesser of the prime interest rate plus 2% or the highest rate allowable under law.   They promised to make monthly installments of $2,505.11

---

[1] Compl. (Doc. No. 1), Ex. A.

[2] *Id.* ¶ 1.

[3] *Id.* ¶¶ 4, 5.

[4] *Id.* ¶ 11.  Paragraph 11 provides:

**GUARANTEE:** The undersigned, by reason of their financial interest in the Applicant and as an inducement to extend credit to the Applicant, hereby personally guarantees the prompt and full performance and payment according to tenor of the within agreement, to its holder hereof and in the event of default, authorizes any holder hereof to proceed against the undersigned, for the full amount due, including but not limited to late fees, the cost of collection including reasonable attorney fees, and hereby waives presentment, demand, protest, notice of protest, notice of dishonor, and any and all excess notices of demand of whatever character to which the undersigned might otherwise be entitled. The undersigned further consents to an extension or modification of terms granted by the holder and waives notice thereof.  If more than one guarantor, the obligation of each shall be joint and several.

*Id.*

[5] Compl., Ex. B.

beginning on December 1, 2014, and a final payment of the remaining balance of principal and interest no later than November 1, 2016.  In the event the defendants failed to pay within five days of the issuance of written notice of default, RDC had the right to declare all sums of principal and interest immediately due and payable.[6]

RDC claims that GoodHeart defaulted under both the Credit Application and the Promissory Note.  It is undisputed that GoodHeart has not remitted payments under the Credit Application since January 22, 2016 and under the Promissory Note since October 14, 2015.[7]  As of oral argument held on November 8, 2016, the balances were $117,761.53 and $37,837.53, respectively.   On February 8, 2016, RDC's credit manager made a written demand for amounts due under both the Credit Application and the Promissory Note.[8]  Nothing has been paid since the demand was made.

### Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor.  *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159–60 (3d Cir. 2003).

The initial burden of demonstrating there are no genuine issues of material fact

---

[6] *Id.* at 2, 3.

[7] *Id.* ¶¶ 21, 22.

[8] Letter from Gordon A. Kulessa, Credit Manager, Rochester Drug Cooperative to Obioma Agoucha, Goodheart Pharmacy, Inc. (Feb. 8, 2016) (Doc. No. 14-10).

falls on the moving party.  Fed. R. Civ. P. 56(a).  Once the moving party has met its burden, the nonmoving parties must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  The nonmovants must show more than the "mere existence of a scintilla of evidence" for elements on which they bear the burden of production.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

## Analysis

### Breach of Contract

GoodHeart and the Agouchas do not dispute they failed to make payments as required under the Credit Application and the Promissory Note.[9]  Nor do they dispute that they received the goods with the value claimed by RDC.  Instead, they contend that liability for the cost of goods is capped at $50,000, the amount of the requested line of credit.  They argue that GoodHeart never intended to be liable for any amount in excess of $50,000.[10]  They also contend that when they signed the personal guarantee, they "never intended to become personal guarantors of the debt of GoodHeart Pharmacy."[11] In support of these contentions, the Agouchas have submitted affidavits claiming that

---

[9] Defs.' Mem. in Opp'n of Pl.'s Mot. for Summ. J. (Doc. No. 20) ("Resp.") at ECF 5.

[10] *Id.* at ECF 8–9; *see also* Defs.' Br. in Supp. of Mot. for Partial Summ. J. (Doc. No. 13) at ECF 7.

[11] Resp. at ECF 5–6.

RDC's agent informed them that they were "signing the Credit Application only on behalf of GoodHeart Pharmacy" and told Obioma Agoucha in early 2016 that the Credit Application was only an application for credit and not a contract.[12]  Yet, it is undisputed that they ordered and received the goods, and did not pay for them.

The primary task in contract interpretation is determining the intent of the parties. *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002).[13]  In doing so, effect must be given to all the provisions in the contract.  *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006).

When the contract language is clear and unambiguous, the court construes the contract as a matter of law.  *Greenfield*, 780 N.E.2d at 170.  On the other hand, when the meaning is ambiguous, the fact finder must discern the parties' intent.  Merely because the parties interpret the contract differently does not mean it is ambiguous. *Moshiko, Inc. v. Seiger & Smith, Inc.*, 529 N.Y.S.2d 284, 288 (N.Y. App. Div.), *aff'd*, 529 N.E.2d 420 (N.Y. 1988); *see also N.Y.C. Off-Track Betting Corp. v. Safe Factory Outlet, Inc.*, 809 N.Y.S.2d 70, 73 (N.Y. App. Div. 2006).  Only where the meaning is capable of more than one interpretation is a contract ambiguous.  *Greenfield*, 780 N.E.2d at 171. Where the alternative meaning is unreasonable, there is no ambiguity.

The Credit Application is unambiguous.   When GoodHeart requested an extension of credit to purchase goods from RDC, it agreed to "pay for all items purchased and services rendered in accordance with RDC's payment terms." GoodHeart requested a credit line of $50,000.  After the $50,000 credit line had been

---

[12] Aff. of Damien Agoucha (Doc. No. 20-3) ¶ 6; Aff. of Obioma Agoucha (Doc. No. 20-4) ¶¶ 6, 9.

[13] Both the Credit Application and the Promissory Note provide that New York law controls. Compl., Ex. A ¶ 14; *id.*, Ex. B at 5.  Therefore, we apply New York law to the breach of contract claim.

reached, GoodHeart continued to order and receive goods from RDC. Because RDC continued to extend credit beyond $50,000 does not relieve GoodHeart and the Agouchas, as guarantors, from their obligation to pay for the goods they ordered.

The Agouchas argue they "never intended" to personally guarantee GoodHeart's liability under the Credit Application.[14] They claim that they were misled by RDC's agent when they signed the documents. They rely on a purported conversation with RDC's salesperson who told them the Credit Application was not a contract. The Agouchas cannot introduce extrinsic evidence that contradicts the unambiguous contract language obligating GoodHeart to "pay for all items purchased."

The parol evidence rule bars extrinsic evidence of integrated agreements to prevent parties from using prior negotiations "to vary or contradict the terms of the writing." *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 627 (N.Y. 1997). An integrated agreement expresses the entire understanding of the parties. *Id.* The parties typically include an integration clause, which expresses that the parties consider the agreement completely integrated. *Id.* However, the absence of an integration clause does not preclude application of the parol evidence rule. New York, unlike most jurisdictions, does not require a contract to include an integration clause to be considered integrated as a matter of law. *Battery S.S. Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 n.3 (2d Cir. 1975) (citing *Higgs v. De Maziroff*, 189 N.E. 555, 557 (N.Y. 1934)); *see also M & T Bank Corp. v. LaSalle Bank Nat. Ass'n*, 852 F. Supp. 2d 324, 331–33 (W.D.N.Y. 2012); *Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000); *Adler & Shaykin v. Wachner*, 721 F. Supp.

---

[14] Resp. at ECF 5, 9.

472, 476–77 (S.D.N.Y. 1988) (quoting *Eighmie v. Taylor*, 98 N.Y. 288, 288 (N.Y. 1885)).

A contract without an integration clause must be read in the context of surrounding circumstances to determine whether the parties intended the document to encompass their entire understanding.  As the New York Court of Appeals explained the rule, "[I]n the absence of a merger clause, as here, the court must determine whether or not there is an integration by reading the writing in light of surrounding circumstances, and by determining whether or not the agreement was one which the parties would ordinarily be expected to embody in the writing."  *Braten v. Bankers Tr. Co.*, 456 N.E.2d 802, 805 (N.Y. 1983) (internal quotation marks omitted).  Therefore, even absent a merger clause, a contract may be an integrated agreement in which case the parol evidence rule bars extrinsic evidence.

We need not decide whether the Credit Application is an integrated agreement. Even if it is not, extrinsic evidence is still inadmissible to contradict the agreement's clear terms.  *Raedle v. Credit Agricole Indosuez*, Civ. No. 04-2235, 2008 WL 4279518, at *6 (S.D.N.Y. Sept. 18, 2008) ("If a contract is not integrated, evidence can be admitted of additional contract terms so long as such terms do not contradict the written terms."); *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996) (citing *U.S. W. Fin. Servs., Inc. v. Tollman*, 786 F. Supp. 333, 342 (S.D.N.Y. 1992) (citing *Laskey v. Rubel*, 100 N.E.2d 140, 140 (N.Y. 1951))). In *4Kids Entm't, Inc. v. Upper Deck Co.*, 797 F. Supp. 2d 236 (S.D.N.Y. 2011), the court succinctly stated, "If the writing is incomplete, parol evidence may be admitted, not to contradict or vary, but to complete, the entire agreement, of which the writing was only a part."  *Id.* at 245 (quoting *Laskey*, 100 N.E.2d at 140).

7

The Agouchas seek to introduce parol evidence that contradicts GoodHeart's express and unambiguous obligation to "pay for all items purchased" and the Agouchas' personal guarantee of GoodHeart's obligation.  The Agouchas may not submit extrinsic evidence that contradicts the Credit Application's written terms.  The Credit Application is not incomplete.  It is unambiguous.  It cannot be contradicted or varied by extrinsic evidence.  Therefore, to the extent the Agouchas' affidavits contradict the Credit Application's written terms, they are inadmissible.

The Credit Application provided signature lines for officers to sign on behalf of GoodHeart, "the Applicant," and for the Agouchas, each as a "Guarantor."  The Agouchas signed for GoodHeart and for themselves.  There is no ambiguity.  The Agouchas agreed to guarantee GoodHeart's obligations under the Credit Application.

*Account Stated*

RDC also moves for summary judgment on an account stated claim for the balances due under the Credit Application and the Promissory Note.  RDC has submitted an account statement identifying open invoices together with 317 pages of the invoices.[15]  The Agouchas argue that the invoices are inadmissible without evidence that they were mailed to them.[16]

An "account stated" is an account in writing that has been "examined and accepted by both parties."  *Leinbach v. Wolle*, 61 A. 248, 248 (Pa. 1905); *see also Bill Goodwin Const., LLC v. Wondra Const., LLC*, Civ. No. 3:13cv157, 2013 WL 4005307 at

---

[15] Ex. to Suppl. the R. (Doc. Nos. 18, 18-1, 18-2, 18-3, 18-4) (Complete Set of Invoices Corresponding to Goods); Pl. Rochester Drug Cooperative, Inc.'s Mot. for Summ. J. Against Defs. Goodheart Pharmacy, Inc., Obioma Agoucha, & Damien Agoucha, Ex. D (Doc. No. 14-7) (Account Statement).

[16] Resp. at ECF 9–10.

*6 (M.D. Pa. Aug. 5, 2013) (citing *Leinbach*).  Account stated is a separate cause of action independent from an underlying contract.  *Richburg v. Palisades Collection LLC*, 247 F.R.D. 457, 464–65 (E.D. Pa. 2008).  It is not an action arising out of the parties' contract.  *Id.*  Thus, once the account is stated and accepted, the cause of action is based on the account stated and not the underlying contract.  *Id.* at 464.[17]

To establish an account stated, one party must render the account and the other party must accept it.  *C-E Glass v. Ryan*, 70 Pa. D. & C.2d 251, 254 (Pa. Ct. Com. Pl. 1975) (citing Pennsylvania Law Encyclopedia); 13 Pa. Law Encyc. § 513 (2016).  Acceptance of an account may be express or implied.  *Robbins v. Weinstein*, 17 A.2d 629, 634 (Pa. Super. 1941).  Acceptance is implied where a party receives and retains invoices without objecting within a reasonable period of time.  *See Bill Goodwin Const.*, 2013 WL 4005307 at *6 (citing Restatement (Second) of Contracts § 282(1) and *Donahue v. City of Phila.*, 41 A.2d 879, 881 (Pa. Super. 1945)).  To prove implied acceptance from a failure to object to the account, the complaining party must show a pattern or history of the parties settling accounts by rendering account statements over a period of time and an extended series of transactions.  *See, e.g.*, *C-E Glass*, 70 Pa. D. & C.2d at 254.

The Agouchas, in a cleverly crafted play on words, argue that RDC has failed to prove that the invoices were mailed.  Significantly, they do not deny that they received the invoices.  Nor do they dispute that GoodHeart ordered and received the goods.  In

---

[17] Because the choice of law provision in the Credit Application does not apply to this independent cause of action, we consider RDC's account stated claim under Pennsylvania law.  Even if we considered the claim under New York law, our analysis would remain the same.  *See Interman Indus. Prods., Ltd. v. R.S.M. Electron Power, Inc.*, 332 N.E.2d 859, 861 (N.Y. 1975) ("[A]n account stated is an account balanced and rendered, with an assent to the balance express or implied; so that the demand is essentially the same as if a promissory note had been given for the balance.").

short, they do not challenge the statement of the account.  Indeed, they cannot.  There is no evidence that GoodHeart or the Agouchas ever objected to the invoices as they continued to order goods over more than two years.  They continued to order from RDC and make payments as recently as January 2016.[18]  By ordering goods and making partial payments over two years without objecting to the invoices, they established a practice of settling accounts.  Therefore, it is undisputed that GoodHeart and the Agouchas, as guarantors of GoodHeart, owe RDC the amount stated in the account.

*Attorney Fees*

RDC requests attorney fees and costs incurred as a result of GoodHeart's default.  The Credit Application provides, "Should Applicant fail to pay in full all invoices and other charges when due, Applicant agrees to pay any and all costs and expenses incurred by RDC in the collection of any unpaid invoices and other charges."[19]

An award of attorney fees is allowed pursuant to contractual terms where the contract was not a contract of adhesion, the terms were clearly stated, and attorney fees were reasonable.  *Yellow Book of N.Y., L.P. v. Cataldo*, 917 N.Y.S.2d 215, 217 (N.Y. App. Div. 2011); *see also TAG 380, LLC v. ComMet 380, Inc.*, 890 N.E.2d 195, 201 (N.Y. 2008) ("[G]enerally, in a breach of contract case, a prevailing party may not collect attorneys' fees from the nonprevailing party unless such award is authorized by agreement between the parties, statute or court rule.") (citation omitted).  In this case, attorney fees are authorized by the Credit Application.  Thus, RDC is entitled to reasonable attorney fees.

---

[18] Ex. to Suppl. the R. (Doc. No. 18-4).

[19] Compl., Ex. A ¶ 6.

**Conclusion**

There are no disputed material facts precluding summary judgment.  Therefore, we shall grant RDC's motion for summary judgment.